IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **TRAVISTENE JONES,** | ) | **CASE NO. 8:10CV275** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **OMAHA HOUSING AUTHORITY aka HOUSING IN OMAHA and STANLEY TIMM, individually and in his official capacity,** | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment or Partial Summary Judgment (Filing No. 19) and the Objection to Paragraphs No. 6, 7, 9, 10, 11, 16, and 20 of the Declaration of Travistene Jones ("Jones Decl.") (Filing No. 24) filed by Defendants Omaha Housing Authority and Stanley Timm. For the reasons discussed below the Defendants' Motion for Summary Judgment will be granted and the Objection to the Jones Decl. will be denied as moot.

## BACKGROUND

Plaintiff Travistene Jones ("Jones"), sued her former employer, the Omaha Housing Authority ("the Authority"), alleging that the Authority retaliated against her for filing a charge of age and race discrimination against the Authority (hereinafter "EEO complaint"). In her Complaint (Filing No. 1) Jones asserted claims under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 in connection with her reassignment from the position of Human Resources Coordinator ("HR Coordinator") to Assistant Site Manager and the Authority's subsequent termination of her employment. Essentially, Jones argues that the Authority forced her out of her position as HR Coordinator in retaliation for her filing of the EEO complaint.

## UNDISPUTED FACTS

Jones did not respond to the statement of material facts filed by the defendant as required by NECivR 56.1(b)(1). (*See* Filing No. 22, Pl. Brief p. 3-4, ¶¶ 1-27.) While Jones did address each numbered paragraph in the Defendants' statement of material facts, in instances where she disputed the Defendants' factual assertions, she did not cite to the evidentiary record to demonstrate the existence of contrary evidence. (*See* Filing No. 22, Pl. Br., p. 3-4, ¶¶ 6, 7, 8, 9, 10, 17, 20.) Instead, Jones provided her own statement of material facts to support her brief. (*See id.* at p. 4-9, ¶¶ 1-25.) Therefore, to the extent that Jones's response is not in compliance with Nebraska Civil Rule 56.1(b)(1), the properly referenced material facts in the Defendants' brief (Filing No. 20), will be considered admitted, unless specifically controverted by Jones with citations to the evidentiary record. The Court has determined that according to the Complaint (Filing No. 1), the Defendants' Answer (Filing No. 7), the parties' briefs (Filing Nos. 20, 22), and the Defendants' index of evidence (Filing No. 21), the following facts are not in dispute:

At all times relevant to her Complaint, Jones was employed by the Authority as an at-will employee. On or about April 3, 2007, Jones filed an EEO complaint of age and race discrimination against the Authority for failing to promote her to or hire her for other positions within the Authority. At the time the EEO complaint was filed, Jones was working as an HR Coordinator at the Authority. In September of 2007, the Authority hired another HR Coordinator, Gale Sayers Proby ("Proby"). The job duties of the two coordinators were split so that each coordinator was responsible for handling the human resources needs of various departments within the Authority. Along with the two HR Coordinators, the Human Resources Department also had an Assistant, Audrey Boone ("Boone"). In October 2007,

George Achola ("Achola"), Interim HR Director for the Authority, transferred Boone to another department within the Authority. Achola made this transfer with the approval of the Authority's Executive Director.

In the fall of 2007, the Authority discovered that paperwork from an employee's evaluation was missing from a personnel file that was stored in the office previously occupied by Boone. Following this discovery, a decision was made to change the locks to that office. After the locks were changed, Jones unsuccessfully attempted to get into the office. Jones inquired why the locks were changed and was provided new keys to the office on the same day.

On December 28, 2007, Achola determined that Jones had failed to perform her job duties in a satisfactory manner. Specifically, Jones failed to timely process applications for the Public Safety Department regarding a job posting in that Department.[1] Jones was issued a written warning citing her failure to meet the necessary standards. On January 3, 2008, Achola determined that Jones had again violated policy and procedures by allowing an employee to start work without having passed a drug test. As a result, Jones was issued another written reprimand and was suspended for one day, January 7, 2008. Jones was to return to work on January 8, 2008, however, Jones called in sick that day. Subsequently, Jones provided the Authority with a note, dated January 8, 2008, from Scott Prescher, M.D. Dr. Prescher's note recommended that Jones be excused from work from January 8, 2008, to February 3, 2008.

---

[1] In her brief Jones argues "she was not behind or late in notifying the Public Safety Department of the status of the application[,]" however, she has not cited to the evidentiary record to support this assertion. (*See* Filing No. 22, Pl. Br., p. 12.)

3

On February 1, 2008, Dr. Prescher sent another note to the Authority excusing Jones from work "for 6 months." The same day, Jones requested leave under the Family Medical Leave Act ("FMLA"). On February 25, 2008, the Authority retroactively approved Jones's FMLA leave effective February 4, 2008 through April 28, 2008. Jones did not return to work at the end of the approved FMLA period of leave. Thereafter, by letter dated April 28, 2008, the Authority advised Jones that her FMLA leave had expired and she was to report to work on May 5, 2008. The letter also stated that, pursuant to policy, her employment would be "resigned" if she was unable to return to work on May 5, 2008.

On May 1, 2008, Jones provided the Authority with a letter from Pamela J. Helem, a mental health therapist. The letter advised that Jones's return to work at that point would be premature. In response, by letter dated May 1, 2008, the Authority advised Jones that it would extend Jones's leave as non-FMLA extended leave and would continue to pay her medical benefits. The letter also notified Jones that the Authority would soon begin the process of filling her original position, but that it would attempt to find her another position should she advise that she was returning to work. Specifically, the letter stated that "[s]ince [Jones's] FMLA leave had expired" the Authority was no longer required to place her in an equivalent job or restore her to her original position, should she return to work.

On May 29, 2008, the Authority posted the HR Coordinator position formerly held by Jones. The posting closed on June 5, 2008. Interviews were held with finalists for the position on June 16 and 17, 2008. A finalist was conditionally offered the HR Coordinator position on June 17, 2008, pending background check. During the same time frame, Jones advised that was she cleared to return to work.

By letter dated June 18, 2008, the Authority advised Jones that her previous position had not been held open, that it had been posted, and that it had been offered to a candidate. However, the letter offered Jones the position of Assistant Site Manager within the Authority at the same salary she had prior to her FMLA leave. On July 1, 2008, the Authority sent a follow-up letter to Jones, requesting that her medical clearance and signed offer letter be sent to the Authority by July 3, 2008. The letter also advised Jones that should the Authority not hear from her by July 3, 2008, the Authority would assume that she was declining the offered position. On July 3, 2008, Jones sent an e-mail to Achola advising him that the Assistant Site Manager position was not to her liking and that she wanted to discuss other options. By letter dated July 3, 2008, Achola advised Jones that the Authority considered Jones's email a rejection of the position offered and, therefore, the Authority considered Jones's employment terminated, effective July 4, 2008.

The Authority's Personnel Policy provides that "[n]either this handbook nor any other [ ] document, confers any contractual right, either express or implied, to remain in the [Authority's] employ. Nor does it guarantee any fixed terms and conditions of your employment. Your employment is not for any specific time and may be terminated at will, with or without cause and without prior notice, by the [Authority], or you may resign for any reason at any time." The Authority's Personnel Policy provides that "[a]ll employees of the [Authority] serve at the pleasure of the [Authority], and no employee shall have any vested rights in his or her employment or in the practices and procedures hereinafter set forth, except only by specific written contract. Employment is at will."

Upon receipt of the Authority's Personnel Policy, Jones signed a statement indicating, among other things, ". . . I specifically acknowledge that I am hired as an

5

employee at will, and that I can resign or be discharged from my employment at any time and for any reason," that "I understand the policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind between the [Authority] and its employees . . ." and that, "[n]othing in this handbook, or any related document or statement, shall limit the right to terminate employment at will."

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "a genuine issue of material fact such that [the] claim should

proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law . . . .'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "some metaphysical doubt as to the material facts," *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Bloom*, 440 F.3d at 1029-30 (emphasis and quotation marks removed) (quoting *Anderson*, 477 U.S. at 247-48).

In employment discrimination cases, summary judgment is not disfavored. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). The *en banc* panel of the Eighth Circuit Court of Appeals has explained that "panel statements asserting a different standard of review for summary judgment in employment discrimination cases are contrary to Supreme Court precedent . . . *and should not be followed*" *Torgerson v. City of Rochester*, No. 09-1131, 2011 WL 2135636, — F.3d —, at *8 (8th Cir. June 1, 2011) (*en banc*) (emphasis added). Accordingly, on a motion for summary judgment, "district courts should not 'treat [employment] discrimination [cases] differently from other ultimate questions of fact.'" *Id.* (*quoting Reeves*, 530 U.S. at 148); *see also Fercello v. County of*

7

*Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (holding there is no "discrimination case exception" to the application of summary judgment).

## DISCUSSION

### I.  Defendants' Objection to Jones's Declaration

The Defendants object to certain portions of the Declaration of Travistene Jones in Support of Response in Opposition to Defendants' Motion for Summary Judgment (Filing No. 23).  Specifically, the Defendants argue that  paragraphs 6, 7, 10, 11, 16, and 20 of the Jones Decl. "constitute inadmissible hearsay that should be excluded under Fed. R. Evid. 802." (Filing No. 24, Objection to Filing No. 23.) Jones counters by arguing that each objected-to statement falls within an exception to the hearsay rule.  (*See* Filing No. 26, Reply Regarding Objection to Filing No. 23.)  The Court need not determine the admissibility of the objectionable statements in order to rule on the Defendants' Motion for Summary Judgment because consideration of the objectionable statements does not alter the Court's conclusions.  Therefore, the Defendants' objection will be denied as moot.

### II.  Title VII Retaliation Claims

Jones claims that the Defendants engaged in retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (hereinafter "Title VII").  Title VII, in relevant part, prohibits an employer from retaliating against an employee "because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Retaliation is a distinct cause of action under Title VII different from claims of discrimination. *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010).  "To defeat summary

judgment on a retaliation claim, a plaintiff must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas*[2] burden-shifting framework." *Young–Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011). Because Jones has produced no direct evidence of retaliation, her claims are evaluated under the *McDonnell Douglas* burden-shifting framework.

Under that framework, first, Jones must establish a prima facie case of retaliation. To do so Jones "must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Burkhart*, 603 F.3d at 477. If this prima facie showing is made, the burden shifts to the Authority to articulate "a legitimate, non-retaliatory reason for the action [it] took against her . . . ." *Id*. If the Authority articulates such a reason, Jones would have to show the Authority's proffered reason was merely pretextual, thereby creating the inference of retaliation. *Id.*

Here, it is undisputed that Jones engaged in a protected activity when she filed an EEO complaint in April of 2007. As such, the Court's analysis will focus on the second and third elements of the prima facie case: whether she suffered an adverse employment action, and whether there is a causal connection between the protected activity and the adverse employment action. After a full review of the record, the Court concludes that (A) Jones failed to show that she suffered an adverse employment action; and (B) Jones failed to establish a causal connection between the protected activity and the alleged adverse employment actions.[3]

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[3] Because Jones has failed to establish two of the three prima facie elements the Court need not delve into the legitimacy of the Authority's proffered reasons for the actions.

### A. Adverse Employment Action

An adverse employment action under Title VII must be "materially adverse," not merely trivial in nature. *Burlington North. & Santa Fe RY. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008). This is because "[t]he antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington North.*, 548 U.S. at 67. Under this "materially adverse" standard, Jones must demonstrate that the Authority's actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. Applying the "materially adverse" standard set forth in *Burlington Northern*, the Eighth Circuit has held that failure to provide training and orientation, denying access to needed tools, interfering with the plaintiff's authority, unfairly adding negative reports and reprimands to plaintiff's personnel file, excluding plaintiff from meetings, and giving the plaintiff a negative evaluation were all insufficient to constitute adverse employment action, even when considered collectively. *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 929-30 (8th Cir. 2007) ("Any harm evidenced in the record was at most trivial, failing to meet the significant harm standard set forth in *Burlington Northern*.").

Here, Jones claims that she suffered retaliation by virtue of the Authority denying her a promotion to HR Director in May of 2007[4]; hiring Proby in October of 2007; assigning duties formerly done by her to Proby; excluding her from certain meetings with the AFLAC Insurance representative; failing to inform her of a change in the Authority's insurance carrier; changing the locks on the file room without notifying her; transferring Boone without

---

[4] Jones did not list this claim in her Complaint. (*See* Filing No. 1.) As such, she has failed to plead a claim of retaliation based on the Authority denying her the position of HR Director in May of 2007. *See Fanning v. Potter*, 614 F.3d 845, 851 (8th Cir. 2010) (holding that a claim not pled in complaint was not properly before district court on motion for summary judgment). Nevertheless, in the interest of judicial economy, the Court will still considered this claim in its analysis.

notifying her; issuing her a written reprimand in December of 2007; suspending her for one day in January of 2008; and reassigning her to the position of Assistant Site Manager in June of 2008. (*See* Filing No. 1, Complaint, ¶¶ 11-19.) The Court concludes that the retaliatory acts alleged by Jones are immaterial, similar to the acts claimed by the plaintiff in *Clegg*. Jones has not demonstrated through evidence that the Authority's alleged retaliatory actions harmed or injured her.[5] Accordingly, Jones has failed to demonstrate that she suffered an adverse employment action. *See Clegg*, 496 F.3d at 928-30; *see also Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (holding that written reprimand is not actionable unless used to alter terms or conditions of plaintiff's employment); *Higgins v. Gonzales*, 481 F.3d 578, 854 (8th Cir. 2007) (holding minor changes in job duties are not actionable under Title VII); *Box v. Principi*, 442 F.3d 692, 696 (8th Cir.2006) (holding a change in job responsibilities "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" to be actionable).

Jones also claims that she suffered a retaliatory act by virtue of the Authority constructively discharging from her position as HR Coordinator. "To prove a case of constructive discharge, [Jones] must show (1) a reasonable person in h[er] situation would find the working conditions intolerable, and (2) the [Authority] intended to force h[er] to quit." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007). "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings[.]" *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000).

---

[5] Jones' claims fall short even of those set forth by the plaintiff in *Clegg*. Jones has not claimed that she ever suffered a dock in pay, was denied access to tools necessary to her work, or was given an unjustified reprimand. Jones has also failed to adequately state how the position of Assistant Site Manager was a diminution in title or position.

11

As such, "the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Id*.

Here, Jones has failed to offer evidence that satisfies the first element. Jones has provided no evidence that a reasonable person in her situation would have found the working conditions at the Authority intolerable. In her email to Achola declining the position of Assistant Site Manager, Jones stated that she "[was] available to discuss other positions or positions that may become available[,]" intimating that Jones was willing to return to work at the Authority in a role other than Assistant Site Manager. (Filing No. 21-2, Ex. P, Jones Email.) This precludes a determination that a reasonable person would have found the working conditions at the Authority were generally intolerable. Therefore, Jones must produce evidence that a reasonable person would have found the working conditions of the Assistant Site Manager position were intolerable. She has made no such showing. Jones has not provided the Court with any evidence concerning the duties and responsibilities of the position. Even assuming that the position was a demotion from HR Coordinator, this fact alone does not support an inference that a reasonable person would have found the working conditions intolerable. *See id.* (noting "[t]he intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings").

### B. Causation

In order to make a prima facie case of retaliation, Jones must produce evidence of a causal connection between the protected activity and the alleged adverse actions. *See Jackson v. United Parcel Serv.*, 548 F.3d 1137, 1142 (8th Cir.2008) (holding that to survive summary judgment plaintiff must show causal connection between protected activity and adverse employment action). Generally, a plaintiff must show more than a mere temporal

connection between the protected conduct and the adverse employment action to present a genuine issue of fact on the element of causation. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). In other words, an adverse action that occurs after an employee engages in a protected activity may be evidence of causation, but alone it is insufficient to establish causation. *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003).

Jones argues that causation can reasonably be inferred from the temporal proximity of her EEO complaint and the denial of the promotion. Specifically, Jones argues that causation can be inferred because she was not hired for the HR Director position "a month after the [EEO] complaint." (Filing No. 22, Pl. Br., p. 12.) The Eighth Circuit, however, has previously held that the passing of one month between an EEO complaint and an adverse employment action did not establish a prima facie case of causation. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 851-52 (8th Cir.2002) (holding that "[the plaintiff] fail[ed] to prove any causal connection between his EEOC claim of discrimination and the [alleged adverse employment action]" when the alleged adverse employment action occurred one month after the defendant employer filed its response to his EEOC claim.) Therefore, in order to survive summary judgment Jones must point to something more than the temporal proximity between her EEO complaint and the alleged adverse employment actions. *See e.g., Bradley v. Widnall*, 232 F.3d 626, 633 (8th Cir.2000) (holding plaintiff "must do more than point to the temporal connection between the filing of her first complaint and the [defendant's] allegedly adverse actions" to establish causation).

Other than the temporal proximity of the events, Jones has failed to point the Court to any evidence that establishes a causal connection between her EEO complaint and the alleged adverse employment action. (*See* Filing No. 22, Pl. Br., p. 12-13 (limiting the

13

discussion on issue of causation to temporal proximity of events).) Accordingly, the Court finds that, as a matter of law, Jones has failed to make a prima facie showing of causation with regard to the denial of promotion in May of 2007.

The Court finds it unnecessary to consider the element of causation as it relates to the alleged adverse employment actions that occurred after May of 2007 because an inverse relationship exists between the passage of time and the inference of causation. Specifically, the other alleged adverse actions occurred five to fifteen months after Jones's EEO complaint (between September of 2007 and July of 2008), virtually eliminating any inference of causation based on temporal proximity. *See Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002) (holding "the interval of two months between the complaint and [plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link").

### III. Section 1983[6]

To state a claim under 42 U.S.C. § 1983, Jones must show that Achola, her supervisor, acted "under color of state law" and that he deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Luckes v. County of Hennepin, Minn.*, 415 F.3d 936, 939 (8th Cir. 2005). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). Here, it is undisputed that Achola acted under color of state law while performing his official

---

[6]To the extent that the Complaint (Filing No. 1) can be construed as asserting a claim under § 1981, the claim must be dismissed. *See Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding § 1983 provides for the exclusive damages remedy for the violation of § 1981 by a state actor).

14

duties as the Interim HR Director for the Authority. As such, the only issue is whether Achola deprived Jones of her rights under the Constitution or federal law.

As an initial matter, Jones's claim fails because she had no property interest in continued employment with the Authority. In order for an employee to have a property interest in continued employment there must be an agreement, either explicit or implied, giving rise to the expectation of continued employment. *Perry v. Sindermann*, 408 U.S. 593, 602 (1972). Here, there was no explicit agreement of continued employment. To the contrary, the Authority's employee handbook clearly stated that employment may be "terminated at will, with or without cause and without prior notice . . . ." (Filing No. 21-3, Ex. A, Proby Aff., p. 2.) Further, it is undisputed that Jones received a copy of the handbook and signed statement acknowledging that she was aware of the at will employment policy of the Authority. Jones attempts to argue that the letter offering her the Assistant Site Manager position created an implied agreement of continued employment. Jones has not demonstrated that she ever accepted the Authority's offer. As such, Jones must point to actions that implied an agreement of continued employment after her rejection of the Assistant Site Manager position. She has made no such showing. Therefore, the Court concludes that Jones has failed to establish that she had a protectable property interest in continued employment.

Moreover, even if Jones had a property interest in continued employment, Jones's claim must fail because she has failed to articulate anything more than a *de minimis* property deprivation. Jones claims that "the failure and or refusal of George Achola to discuss the position of Assistant Site Manager being offered to her prior to the July 3, 2008, letter terminating her employment was a violation of due process." (Filing No. 22,

Pl. Br., p. 15.) The Supreme Court has held that a *de minimis* property deprivation does not implicate Due Process concerns. *Cf Goss v. Lopez*, 419 U.S. 565, 576 (holding Due Process Clause concerns implicated "as long as a property deprivation is not *de minimis*") (emphasis added). As noted above, Jones's reassignment would not have affected her salary or benefits. Therefore, her reassignment merely affected her job responsibilities. Such a property deprivation is categorically beneath the level of concerns implicated by the Due Process Clause. In other words, the Due Process Clause does not guarantee every employee the right to discuss a transfer with his or her supervisor.

## CONCLUSION

Upon reviewing the pleadings and the exhibits submitted by the parties, and viewing them in the light most favorable to Jones, the Court concludes that, as a matter of law, Jones has failed to make a prima facie showing of retaliation under Title VII. Accordingly,

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 19) is granted;
2. Plaintiff Travistene Jones's claims against Defendants Omaha Housing Authority and Stanley Timm are dismissed, with prejudice;
3. Defendants' Objections to Paragraphs No. 6, 7, 8, 9, 10, 11, 16 and 20 of Filing No. 23 (Filing No. 24) are denied as moot; and
4. A separate judgment will be entered.

DATED this 14th day of July, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge